PARIENTE, J.
In this case, we consider the constitutionality of -section 440.15(2)(a), Florida Statutes (2009) — part of the state’s workers’ compensation law — -which cuts off disability benefits after 104 weeks to a worker who is totally disabled and incapable of working but who has not yet reached maximum medical improvement. We conclude that this portion of the worker’s compensation-statute is unconstitutional under article I, section 21, of the Florida Constitution, as a denial of the right of access to courts, because • it deprives an injured worker of disability benefits under these circumstances' .for an indefinite amount of time — thereby creating a system of redress that no longer functions as a reasonable alternative to tort litigation.
In Westphal v. City of St. Petersburg/City of St. Petersburg Risk Management, 122 So.3d 440, 442 (Fla. 1st DCA 2013), ah en banc majority of the First District Court of Appeal valiantly attempted to save the statute from unconstitutionality by interpreting section 440.15(2)(a) so that the severely injured worker who can no longer, receive temporary total disability benefits, but who-is not yet eligible for permanent total disability benefits, would not be cut off from compensation after 104 weeks.[1] The judiciary, however, is without *314 power to rewrite a plainly written statute, even.if it is to avoid an unconstitutional result. See Brown v. State, 358 So.2d 16, 20 (Fla.1978) (“When the subject statute in no way suggests a saving construction, we will not abandon judicial restraint and effectively rewrite the enactment.”). We accordingly quash the First District’s decision.
Consistent with the views of both the petitioner, Bradley Westphal, and the principal respondent, the City of. St. Pe-tersburg,, we conclude that section 440.15(2)(a) of the workers’ compensation law is plainly .written and therefore does not permit this Court to resort to rules of statutory construction. See Knowles v. Beverly Enters.-Fla., Inc., 898 So.2d 1, 5 (Fla.2004), Instead, we must give the statute its plain and obvious meaning, which provides that “[o]nce the employee reaches the maximum number of weeks allowed [104 weeks], or the employee reaches the date of maximum medical improvement, whichever occurs.earlier, temporary disability benefits shall cease and the injured worker’s permanent impairment shall be determined.” § 440.15(2)(a), Fla. Stat. The statute does not — as the First District erroneously concluded — provide that the worker is at that time legally entitled to permanent total disability benefits, nor does it provide’ that the worker is automatically deemed to be at maximum medical improvement based on the cessation of temporary total disability benefits. See Westphal, 122 So.3d at 444.
Applying the statute’s plain meaning, we conclude that the 104-week limitation on temporary total disability benefits results in a statutory gap in benefits, in violation of the constitutional right of access to courts. The stated legislative intent of the workers’ compensation law is to “assure the quick and efficient delivery of disability and medical benefits to an injured worker and to facilitate the worker’s return to gainful reemployment at a reasonable cost to the employer.” § 440.015, Fla. Stat. (2009). Section 440.15(2)(a), however, operates in the opposite manner. The statute cuts off a severely injured worker from disability benefits at a critical time, when the worker cannot return to work and is totally disabled but the worker’s doctors— chosen by the employer — deem , that the worker may still continue to medically improve.
As applied to these circumstances, the workers’ compensation law undoubtedly fails to provide “full medical care and wage-loss payments for total or partial disability regardless of fault.” Martinez v. Scanlan, 582 So.2d 1167, 1171-72 (Fla.1991). Instead, for injured workers like Westphal who are not yet legally entitled to assert a claim for permanent total disability benefits at the .conclusion of 104 weeks of temporary total disability benefits, the workers’ compensation law lacks adequate and sufficient safeguards and cannot be said to continue functioning as a “system of compensation without contest” that stands as a reasonable alternative to *315 tort litigation. Mullarkey v. Fla. Feed Mills, Inc., 268 So.2d 363, 366 (Fla.1972). Contrary to Justice Canady’s dissenting opinion, the seminal case on.the meaning of the Florida Constitution’s access. to courts provision, Kluger v. White, 281 So.2d 1 (Fla.1973), specifically discussed the test for determining the constitutionality .of the workers’ compensation statutory scheme under the access to courts provision, article I, section 21, of the Florida Constitution. The constitutional yardstick, which we applied in Martinez and Mullar-key for determining whether an access-to-courts violation occurred as a result of changes made to the workers’ compensation statutory scheme, is whether the scheme continues to provide “adequate, sufficient, and even preferable safeguards for an employee who is injured on the job.” Kluger, 281 So.2d at 4.
Accordingly, we hold that the statute as written by the Legislature is unconstitutional. However, we conclude that this unconstitutional limitation on temporary total disability benefits does not render the entire workers’ compensation system invalid.[2] Rather, we employ the remedy of statutory revival and direct that the limitation in the workers’ compensation law preceding the 1994 amendments to section 440.15(2)(a) is revived, which provides for temporary total disability benefits not to exceed 260 weeks— five years of eligibility rather than only two years, a limitation we previously held “passes constitutional muster.” Martinez, 582 So.2d at 1172.
I. FACTS AND PROCEDURAL HISTORY
In December 2009, Bradley Westphal, then a fifty-three-year-'old firefighter in St. Petersburg, Florida, suffered a severe lower back injury caused by lifting heavy furniture in the course of fighting a fire. As a result of the lower back injury, Westphal experienced extreme pain and loss of feeling in his left leg below the knee and required multiple surgical procedures, including an eventual spinal .fusion.
Shortly after his workplace injury* Westphal began receiving benefits, pursuant to the workers’ compensation law set forth in chapter 440, Florida Statutes (2009). Specifically, the City of St. Peters-burg began to provide both indemnity benefits, in the form of temporary total disability benefits pursuant ' to section *316 440.15(2), Florida Statutes, and medical benefits.
Under section 440.15(2)(a), entitlement to temporary total disability benefits ends when a totally disabled injured worker reaches the date of máximum' medical improvement or after 104 weeks, whichever occurs earlier. § 440.15(2)(a), Fla. Stat. The “date of maximum medical improvement” is defined in section 440.02(10), Florida Statutes (2009), as “the date after which further recovery from, or lasting improvement to, an injury or disease can no longer reasonably be anticipated, based upon reasonable medical probability.” Westphal did not reach maximum medical improvement prior to the expiration of the 104-week limitation on temporary total disability benefits.
At the expiration of temporary total disability benefits, Westphal was still incapable of working or obtaining employment, based on the advice of his doctors and the vocational experts that examined him. In an attempt -to replace his pre-injury wages of approximately $1,500 per week that he was losing because -of his injuries, West-phal filed.a-petition for benefits, claiming either further temporary disability or permanent total disability pursuant to section 440.15(1), Florida Statutes (2009).
A. Judge of Compensation , . Claims Decision
The Judge of Compensation Claims (JCC) held a hearing' on Westphal’s petition' and subsequently denied the claim for permanent total disability benefits based on its interpretation of City of Pensacola Firefighters v. Oswald, 710 So.2d 95 (Fla. 1st DCA 1998), and Matrix Employee Leasing, Inc. v. Hadley, 78 So.3d .621 (Fla. 1st DCA 2011). In Oswald, the First District held that to receive permanent total disability benefits, “an employee whose temporary benefits have run out — or are expected to do so imminently — must be able to show not only total disability upon the cessation of temporary benefits but also that- total disability will be ‘existing after the date of maximum medical improvement.’ ” 710 So.2d at 98, abrogated by Westphal, 122 So.3d at 448 (quoting § 440.02(19), Fla. Stat. (Supp.1994)). The First District also observed that the statutory scheme could create a statutory gap— a period of time when totally disabled individuals would no longer be eligible for temporary total disability benefits and could not receive any disability benefits until, possibly, finally being declared eligible for permanent total disability benefits. Id. at 97-98. In Hadley, the First District again acknowledged the concern of a statutory gap in benefits, but reaffirmed Oswald nonetheless. See Hadley, 78 So.3d at 624-25, receded , from by Westphal, 122 So.3d at 442.
Based on this line of case law, the JCC denied Westphal’s claim. In its final order, the JCC found that Westphal had not reached maximum medical improvement and that it was “too speculative to determine whether he will remain totally disabled after the date of [maximum medical improvement] has been reached from a physical standpoint,” Thus, Westphal fell into the statutory gap — still totally disabled at the cessation of temporary total disability benefits, but not yet entitled to permanent total disability benefits because he could not prove that he would still be totally disabled when he reached maximum medical improvement. He was, in essence, completely cut off from disability benefits for an indefinite amount of time, unless and until he could claim entitlement to permanent total disability benefits at some future date and, even then, without any ability to recover disability benefits for his time in the statutory gap.
B. First District Panel Decision
Westphal appealed to the First District, contending that the JCC erred in deter *317 mining that he was not entitled to permanent total disability benefits.' He further argued that the 104-week statutory limitation on temporary total disability benefits, as applied to him, was an unconstitutional denial of access to courts. A panel of the First District agreed with the constitutional claim, holding that the 104-week limitation on temporary total disability benefits was unconstitutional as applied to the facts of this case. .
Specifically, relying on Kluger, 281 So.2d 1, the First District panel concluded that the 104-week limitation on temporary total disability benefits was'an inadequate remedy as compared to the 350 weeks available when voters adopted the access to courts provision in the 1968 Florida Constitution. The First District panel also observed that the 104-week limitation on temporary total disability benefits was'the lowest in the United States. The First District panel applied its decision prospectively and instructed the JCC to grant Westphal additional temporary total disability benefits, not to exceed 260 weeks, as would have been provided under the relevant statutory provisions in effect before the 1994 Amendment of section 440.15(2)(a), limiting eligibility for temporary total disability benefits to a maximum of 104 weeks.
C. First District En Banc Decision
. Subsequent to the panel decision, the First District granted motions for rehearing en banc filed by the City and the State. The First District then issued an en banc decision withdrawing the panel opinion that had declared the statute unconstitutional. Setting forth a new interpretation of the statute to avoid a holding of unconstitutionality, the First District’s en banc decision receded from Hadley, 78 So.3d 621, and abrogated Oswald, 710 So.2d 95.
In addressing the issue of Westphal’s entitlement to disability benefits, the en banc majority determined that the First District’s construction of the statute fifteen years" earliér in Oswald, and then again two years earlier in Hadley, was incorrect. Specifically, the First District noted, that the statute requires a medical evaluation either when' an injured worker reaches maximum medical improvement or six weeks before the expiration of the 104-week- period of eligibility for temporary total' disability benefits, whichever occurs earlier, and that the doctor' must assign an impairment rating as part of this evaluation. Westphal, 122 So.3d at 444. The First District construed the use of the phrase “permanent impairment” in section 440.15(2)(a) to signify that the worker has attained maximum medical improvement. Id. at.445-46. Accordingly, the First District held that “a worker who is totally disabled as a result of a workplace accident and remains, totally disabled.by the end of his or her eligibility for temporary total disability benefits is deemed to be at maximum medical improvement by operation of law and is therefore eligible to assert a claim for permanent and total disability benefits.” Id. at 442. ’
As a result of this new interpretation of the statute, which eliminated the statutory gap, the First District found it unnecessary to consider whether its prior, now discredited interpretation of the statute in Hadley — recognizing the gap — rendered the statute unconstitutional as a denial of the . right of access to courts. Id. at 447. The First District then certified the question it passed upon as one of great public importance. Id. at 448. We granted review[3] and now quash the First District’s *318 en banc decision and hold the statute unconstitutional as applied, in accordance with the prior panel opinion.
II. ANALYSIS
Both Westphal as the petitioner and the City as the principal respondent argue before this Court that the First District’s previous construction of the statute in Hadley and Oswald was correct, and that the new interpretation advanced by the en banc majority in Westphal amounts to a violation of separation of powers, due process, and the principle of stare decisis. The State, which is .also a respondent, agrees that the previous interpretation of the First District in Hadley and Oswald is correct, but argues that the First District’s new construction of section 440.15(2)(a) is a reasonable alternative interpretation if this Court is inclined to declare the 104-week limitation on temporary total disability benefits .to be invalid as a denial of access to courts. Westphal, however, argues that there is no judicial fix and that the 104-week ' limitation in section 440.15(2)(a), as applied to him and others similarly situated, is an unconstitutional denial of access to courts.
We thus begin our analysis by interpreting section 440.15 to determine if the First District’s en banc opinion — eliminating the’statutory gap — provides a permissible statutory construction, or if the First District’s prior opinions in Hadley and Oswald — recognizing the statutory gap created by the Legislature — provided the correct interpretation. After concluding that the First District’s en banc opinion is an impermissible judicial rewrite of the Legislature’s plainly written statute, we are forced to confront the constitutional issue of whether ’the statute, as applied to West-phal and other similarly situated severely injured workers, is unconstitutional. Concluding that the statute, as applied, violates the access to courts provision of the Florida Constitution, we conclude by considering the appropriate remedy.
A. Section 440.15, Florida Statutes
Section 440.15, Florida Statutes (2009), governs the payment of disability benefits to injured workers. As of the 1968 adoption of the Florida Constitution, permanent total disability benefits were determined “in accordance with the facts,” and the term “maximum medical improvement” was not included in the workers’ compensation law. § 440.15(1), Fla. Stat. (1968). Nevertheless, the phrase “maximum medical improvement” was part of this Court’s lexicon because it assisted in determining the permanence of the injury. Indeed, in 1969, this Court noted that “[t]he date of maximum medical improvement marks the end of temporary disability and the beginning of permanent disability.” Corral v. McCrory Carp., 228 So.2d 900, 903 (Fla.1969). At that time, section 440.15(2) provided for the payment of temporary total disability benefits for a duration not to exceed 350 weeks. § 440.15(2), Fla. Stat. (1967).
In 1979, the Legislature added the term “date of maximum medical improvement” to the statute, defining it consistently with this Court’s prior 1969 construction in Corral and requiring that the date be “based upon reasonable medical probability.” § 440.02(22), Fla. Stat. (1979). That statutory definition has remained unchanged to this day.
In 1990, the Legislature reduced the duration of’temporary total disability benefits from 35Ó weeks to 260 weeks. *319 § 440.15(2), Fla. Stat. (1990). Then, just four years later, and as part of an- extensive statutory overhaul, the Legislature further reduced the duration of temporary total disability benefits from 260 weeks to 104 weeks. § 440.15(2)(a), Fla. Stat. (1994).
Accordingly, in 2009, at the time of the events giving rise to this case, section 440.15(1) provided in part:
(a) In case of total disability adjudged to be permanent, 66 % percent of the average weekly wages shall be paid to the employee during the continuance of such total disability. No compensation shall be payable under this section if the employee is engaged in, or is physically capable of engaging-in, at least sedentary employment.
(b) In the following cases, an injured employee is presumed to be permanently and totally disabled unless the employer or carrier establishes that the employee is physically capable of engaging in at least sedentary employment within a 50-mile radius of the employee’s residence:
[[Image here]]
In all other cases, in order to obtain permanent total disability benefits, the employee must establish that he or she is not able to engage in at least sedentary. employment, within a 50-mile radius of the employee’s residence, due to his or her physical limitation.... Only claimants with catastrophic injuries or claimants who are incapable of engaging in employment, as described in this paragraph, are eligible for permanent total benefits. In no other case may permanent total disability be awarded.
Under the plain language of this provision, permanent total disability benefits are expressly limited to “claimants with' catastrophic injuries or claimants who are incapable of engaging in employment.” § 440.15(l)(b), Fla. Stat. (2009). “In no other case may permanent total disability be awarded.” Id. ,.
Section 440.15(2)(a), which governs temporary total disability benefits, provided in part as follows:
Subject to ■ subsection (7), in case of disability total in character but temporary in quality, 66 % percent of the average weekly wages shall be paid to the ■ employee during the continuance there-of, not to exceed 104 weeks except as provided in this subsection, s. 440.12(1), and s. 440.14(3).[ 4] Once the employee reaches the maximum number of weeks allowed, or the employee reaches the date of maximum medical improvement, whichever occurs earlier, temporary disability benefits, shall cease and the injured worker’s permanent impairment •shall be determined.
Under the plain language of this provision, temporary total disability benefits are payable for no more than 104 weeks, after which the worker’s permanent impairment rating must be determined. “The perma-. nent impairment rating is .used to pay ‘impairment income-benefits,’” as distinguished from permanent total disability benefits, “commencing on ‘the day" after the employee reaches [maximum medical improvement] or after the expiration of temporary benefits, whichever occurs ear *320 lier,’ and' continuing for a period determined by the employee’s percentage of impairment,” Hadley, 78 So.3d at 624 (quoting § 440.15(3)(g), Fla. Stat.).
As the First District recognized in Had-ley, “[t]hfe statutory scheme in section 440.15 works seamlessly when the injured employee reaches [maximum medical improvement] prior to the expiration of the 104 weeks of temporary disability benefits.” Id., But where “the employee is not at [maximum medical improvement] at the expiration of the 104 weeks, there is the potential for a ‘gap’ in disability benefits because [temporary total disability] benefits cease by operation of law after 104 weeks and entitlement to [permanent total disability] .benefits is generally- not ripe until the employee reaches [maximum medical improvement].” Id.
Analyzing these statutory provisions, and in an apparent effort to avoid the statutory gap, the’First District in West-phal ultimately concluded that the Legislature’s use of the term “permanent impairment” iii section 440.15(2)(a)' signifies that the disabled worker has attained maximum medical improvement by operation of law. See Westphal, 122 So.3d at 445. The First District therefore held that “a worker who is totally disabled as a result of a workplace accident and remains totally disabled by the end of his or her eligibility for temporary total disability benefits is deemed to be'at maximum medical improvement’ by operation of law and is therefore eligible to assert a claim for permanent and total disability benefits.” Id. at 442.
Although this Court’s review of the First District’s statutory interpretation is de novo, “statutes come clothed with a presumption of constitutionality and must be construed whenever possible to effect a constitutional outcome.” Crist v. Fla. Ass’n of Crim. Def. Lawyers, Inc., 978 So.2d 134, 139 (Fla.2008).’ While we are confident that the First District en banc majority was attempting to save the statute’s constitutionality by interpreting it so as to avoid a draconian result for severely injured workers, the clear language of the statute simply does not allow us to agree with the First District’s interpretation.
Rather, the previous interpretation provided by the First District in Oswald, and adhered to in Hadley, is consistent with the Legislature’s plainly stated intent, which nowhere indicates that the Legislature sought to equate the expiration of temporary total disability benefits with maximum medical improvement. As stated in Oswald, uncier- the plain language of the statute, “an employee whose temporary benefits have r.un out — or are expected to do so imminently — must be able to show not only total disability upon the cessation of temporary benefits but also that total disability will be existing after the date of maximum medical improvement” in order to be eligible to receive permanent total disability benefits. 710 So.2d at 98 (internal. citation omitted).
Specifically, section 440.15(2)(a) requires an injured worker’s “permanent impairment,” [5] as opposed to permanent total disability, to be determined. In addition, section 440.15(3), which pertains to “permanent impairment benefits,” is the only section that discusses an “evaluation” for permanent impairment of the employee, with entitlement to such benefits to commence the day after the employee reaches *321 maximum medical improvement or his or her temporary total disability benefits expire. Permanent impairment benefits are distinct from, and not a substitute for, total disability benefits. Thus, the plain language of the statute provides for per-, manent impairment to be determined for purposes of impairment benefits as opposed to permanent total disability benefits.
It is clear from the statute that the Legislature intended to limit the duration of temporary total disability benefits to a maximum of 104 weeks. It is further clear that the Legislature intended to limit the class of individuals who are entitled to permanent total disability benefits to those with catastrophic injuries and those who are able to demonstrate a permanent inability to engage in even sedentary employment within a fifty-mile .radius of their home. In other words, these .provisions “create a gap in disability benefits for those injured workers who are totally disabled upon the expiration of temporary disability benefits but fail to prove prospectively that total disability will exist after the date of [maximum medjcal improvement].” Hadley, 78 So.3d at 626 (quoting Crum v. Richmond, 46 So.3d 633, 637 n. 3 (Fla. 1st DCA 2010)).
Although this Court must, whenever possible, construe statutes to effect a constitutional outcome, we may not salvage a plainly written statute by rewriting it. See Suit v. State, 906 So.2d 1013, 1019 (Fla.2005) (“Courts may not go so far in their narrowing constructions so as to effectively rewrite legislative enactments.”). The gap in benefits caused by the Legislature’s decision to reduce the duration of entitlement to temporary total disability benefits may be an unintentional, unanticipated, and unfortunate result. But even if potentially unwise and unfair, it is not the prerogative of the courts to rewrite a statute to overcome its shortcomings. See Clines v. State, 912 So.2d 560, 558 (Fla. 2005) (“A court’s function is to interpret statutes as they are written and give effect to each word in the statute.” (quoting Fla. Dep’t of Revenue v. Fla. Mun. Power Agency, 789 So.2d 320, 324 (Fla.2001))); Metro. Dade Cty. v. Bridges, 402 So.2d 411, 414 (Fla.1981), receded from on other grounds by Makemson v. Martin Cty., 491 So.2d 1109 (Fla.1986) (explaining that “courts may not vary the intent, of the legislature with respect to the meaning of the statute in order to render the statute constitutional”).
■ Because we hold that the statute is clear in creating a statutory gap in benefits, and thus not susceptible to the rules of statutory- construction, we turn to Westphal’s constitutional challenge — that the statute as plainly written results in a denial of access to courts. •
B. Denial of Access to Courts
Article I, section 21, of the Florida Constitution, part 'of our state constitutional “Declaration of Rights” since 1968, guarantees every person access to the courts and ensures the administration of justice without denial or delay: “The courts shall be open to every person for redress of any injury, and justice shall be administered ivithout sale, denial' or delay.” Art. I, § 21, Fla. Const. (emphasis added). This important state constitutional right has been construed liberally in order to “guarantee broad accessibility to the courts for resolving disputes.” Psychiatric Assocs. v. Siegel, 610 So.2d 419, 424 (Fla.1992), receded from on other grounds by Agency for Health Care Admin. v. Associated Indus. of Fla., Inc., 678 So.2d 1239 (Fla.1996).
In Kluger, this Court explained the meaning of the access to courts provision and the necessary showing for demonstrating a constitutional violation based on access to courts:
*322 [W]here a right of access to the courts for redress for a particular injury has been provided by statutory law predating the adoption of the Declaration of Rights of the Constitution of the State of Florida, or where such right has become a part of the common law of the State pursuant to Fla. Stat. § 2.01, F.S.A., the Legislature is without power to abolish such a right without providing a reasonable alternative to protect the rights of the people of the State to redress for injuries, unless the Legislature can show an overpowering public necessity for the abolishment of such right, and no alternative method of meeting such public necessity can be shown.
281 So.2d at 4.
Prior to 1968, when the access to courts provision was adopted, the Legislature had already abolished the common-law tort remedy for injured workers and enacted a workers’ compensation law “as administrative legislation to be simple, expeditious, and inexpensive so that the injured employee, his family* or society generally, would be relieved of the economic stress resulting from work-connected injuries, and place the burden on the industry which caused the injury.” Lee Eng’g & Constr. Co. v. Fellows, 209 So.2d 454, 456 (Fla.1968). The workers’ compensation law “abolishes the right to sue one’s employer and substitutes the right to receive benefits under the compensation scheme.” Sasso v. Ram Prop. Mgmt., 452 So.2d 932, 933 (Fla.1984).
Nevertheless, the fact that workers’ compensation was created prior to 1968 as a non-judicial statutory scheme of no fault benefits intended to provide full medical care and wage-loss payments does not mean that changes to the workers’ compensation law to reduce or eliminate benefits are immune from a constitutional attack based on access to courts. In fact, this Court in Kluger specifically discussed the alternative remedy of workers’ compensation, explaining that “[wjorkmen’s compensation abolished the right to sue one’s employer in tort for a job-related injury, but provided adequate, sufficient, and even preferable safeguards for an employee who is injured on the job, thus satisfying one of the exceptions to the rule against abolition of the right to redress for an injury.” Kluger, 281 So.2d at 4 (emphasis added). In other words, as Kluger held, workers’ compensation constitutes a “reasonable alternative” to tort litigation— and therefore does not violate the access to courts provision — so long as it provides adequate and sufficient safeguards for the injured employee. Id.
This Court has applied the Kluger analysis in subsequent cases that have raised constitutional challenges to the workers’ compensation law based on access to courts. Citing to Kluger, this Court in Martinez explained that in order to be upheld as constitutional, the workers’ compensation law must continue to provide a “reasonable alternative to tort litigation.” Martinez, 582 So.2d at 1171-72; see also Mahoney v. Sears, Roebuck & Co., 440 So.2d 1285, 1286 (Fla.1983) (“Workers’ compensation, therefore, still stands as a reasonable litigation alternative.”).
In Martinez, this Court noted that it “previously has rejected claims that workers’ compensation laws violate access to courts by failing to provide a reasonable alternative to common-law tort remedies.” Martinez, 582 So.2d at 1171 (citing Kluger, 281 So.2d at 4). Although the 1990 amendment addressed by the Court in Martinez “undoubtedly reduce[d] benefits to eligible workers,” by reducing the administration of temporary total disability benefits from 350 weeks to 260 weeks, this Court concluded at that time that “the workers’ compensation law remains a rea *323 sonable alternative to tort litigation.” Id. at 1171-72 ■ (emphasis added). :But this conclusion was premised on the; holding that the workers’ compensation scheme as a whole continued to provide- “injured workers with full medical care and wage-loss payments for total or partial disability regardless of fault and without the delay and uncertainty of tort litigation.” Id. at 1172. That is, under the Kluger analysis, the.law!at the time of Martinez, which provided for 260 weeks for temporary total disability, continued to provide adequate and sufficient safeguards for injured employees.
Therefore, although this Court has rejected constitutional challenges to the workers’ compensation law in the past, our precedent clearly establishes that, ■ when confronted with a constitutional challenge based on access to courts, we must determine whether the law “remains .a reasonable alternative to tort litigation.” Acton v. Fort Lauderdale Hosp., 440 So.2d 1282, 1284 (Fla.1983). However, because the workers’ compensation law had already been adopted in 1968, the question in this case is whether the workers’ compensation law with regard to the 104-week limitation remains a “system of compensation without contest,” Mullarkey, 268 So.2d at 366, that provides “full medical care and wage-loss payments for total or partial disability regardless of fault,” Martinez, 582 So.2d at 1172 (emphasis added):
The 104-week limitation on temporary total disability benefits and the statutory gap must therefore be viewed through' the analytical paradigm of Kluger, asking whether the workers’ compensation law ■ continues to provide adequate and sufficient safeguards for the injured worker.! and thus constitutes a constitutional, reasonable alternative to tort litigation. Kluger, 281 So.2d at 4. The “reasonable - alternative” test is then -the linchpin and measuring stick, and this Court has undoubtedly upheld as constitutional many limitations on workers’ compensation benefits as benefits have progressively been reduced over the years and the statutory scheme changed to the detriment of the injured worker.
But, there must eventually come a “tipping point,” where the diminution of benefits becomes so significant as to constitute a denial of benefits — thus creating a constitutional violation. We accordingly must review what has occurred to the workers’ compensation system since the 1968 adoption of the access to courts provision, as it relates to providing “full medical care and wage-loss payments for total or- partial disability regardless of fault,” Martinez, 582 So.2d at 1172, in order to determine whether we have now reached that constitutional “tipping point.”
As applied to Westphal, the current workers’ compensation statutory scheme does not just reduce the amount of benefits he would receive, which was the issue we addressed in Martinez, but in fact completely cuts off his ability to receive any disability benefits at all. It does so even though there is no dispute that Westphal remained a severely injured and disabled firefighter under active treatment by doctors the City selected for him. As stated in the First District’s original -panel opinion: , .
Under this law, the City — not West-phal — had the right- to select and, if appropriate, de-select, the doctors who would treat his work-related injuries. Through this statutory system of recovery, the City had the right to meet and confer with their selected doctors without Westphal’s involvement, and obtain otherwise-confidential medical- information — whether or not Westphal consented to such communications. And the City had the right to make decisions as *324 to whether it would authorize the medical treatment recommended by the doctors of its choosing. For his part, Westphal, removed from his otherwise inherent right to select his medical providers and make unfettered decisions about his medical care, was required to follow the recommendations of the doctors authorized by his employer. Should he fail to do so, he risked losing entitlement to his workers’ compensa-tion benefits, his only legal remedy.
As part of his medical care, Westphal required multiple surgical procedures, culminating in a five-level fusion of the lumbar spine. Under chapter 440, Westphal was then required to refrain from working and go without disability pay or wages — and wait. Westphal had to wait until the [City’s] authorized doctors opined that he had reached maximum medical improvement, with no guarantee that such a day would ever come. But, even once he fully recovered, Westphal could not, under normal circumstances, recover disability benefits for the-indeterminate waiting period.
Westphal v. City of St. Petersburg/City of St. Petersburg Risk Mgmt., No. 1D12-3563, op. at 315-16 (Fla. 1st DCA Feb. 28, 2013) (footnote omitted) (emphasis added), opinion withdrawn and superseded on rehearing en bane by Westphal, 122 So.3d 440. In other words, even though doctors chosen by the City had performed multiple surgical procedures culminating in a five-level spinal fusion, because those same doctors did not render an opinion that Westphal had reached maximum medical improvement — that is, that he had reached the end of his medical recovery and would improve no further — Westphal was not yet eligible for permanent total disability benefits. And there was no way--to know when those doctors would, determine that he had reached maximum medical improvement, leaving Westphal without disability benefits for an1 indefinite amount of time while he was still- totally disabled and incapable of working.
In comparing the rights of a worker such as Westphal injured on the job today with those of a worker injured in 1968, the extent of the changes in the workers’ compensation system is dramatic. A worker injured in 1968 was entitled to receive temporary total disability benefits for up to 350 weeks. See § 440.15(2), Fla. Stat. (1967). In 1990, the Legislature reduced the availability of temporary total disability benefits from 350 to 260 weeks — a 26.7% reduction of two years. See ch. 90-201, § 20, Laws of Fla. Then, in 1993, the Legislature again reduced the availability of temporary total disability benefits, this time from 260 weeks to 104 weeks — a 60% reduction/- See ch. 93-415, § 20, Laws of Fla. This means that an injured worker such as Westphal is now eligible to receive only 104 weeks of temporary total disability benefits — a massive 70% reduction when compared to the temporary total disability benefits available in 1968.
It is uncontroverted that decreasing substantially the period of payments from 350 weeks to 104 weeks, standing alone, results in a dramatic reduction from almost seven years of disability benefits down to two years. Whereas almost seven years or even five years post-accident should be a reasonable period for an injured worker to achieve maximum medical improvement, clearly two years is not for the most severely injured of workers, like Westphal, who might be in need of multiple surgical interventions.
.Currently, at the conclusion of the 104-wéek limit, temporary total disability benefits cease, regardless of the condition of the injured - worker. Therefore, rather than receive “full medical care and wage-loss payments” for a continuing disability, *325 as the workers’ compensation law was intended, an injured worker’s, full medical care and wage-loss payments are eliminated after 104 weeks if the worker falls into the statutory gap. This is true even if the worker remains incapable of working for an indefinite period of time, based on the advice of the employer-selected doctors.
Recognizing the constitutional implications of such a statutory scheme, Judge Van Nortwick, in his dissent in Hadley, cogently noted:
[I]n the case of a totally disabled claimant whose rights to temporary disability benefits has expired, but who is prohibited from receiving permanent disability benefits, the elimination of disability benefits may reach a point where the claimant’s cause of action has been effectively eliminated. In such a case, the courts might well find that the benefits under the Workers’ Compensation Law are no longer a reasonable alternative to a tort remedy and that, as a result, workers have been denied access to. courts.
78 So.3d at 634 (Van Nortwick, J., dissenting). We have now reached that point at which “the claimant’s cause of action has been effectively eliminated” — the constitutional “tipping point” of which Judge Van Nortwick forewarned.
We conclude that the, 104-week limitation on temporary total disability benefits, as applied to a worker like Westphal, who falls into the statutory gap at the conclusion of those benefits, does not provide a “reasonable alternative” to tort litigation. Under the current statute, workers such as Westphal are denied theft constitutional right of access to the courts. We agree with the point our colleague, Justice Lewis, makes in his concurring in result opinion that:-
Under the plain language of the statute, many hardworking Floridians who become injured in the course of employment are denied ,the benefits necessary to pay theft bills and, survive on a day-to-day basis.. The inequitable impact of this statute is patent because it provides permanent total disability benefits to the disabled worker who reaches maximum medical improvement quickly, but arbitrarily and indefinitely terminates benefits to other disabled workers — i.e., until the employee proves that he or. she is permanently and totally disabled once maximum medjcal improvement is attained, even where there is no dispute that the employee is totally disabled at the time the temporary benefits expire, and even ifpiaximum medical improvement will occur in the future.
Concurring in result op. of Lewis, J., at 329-30 (footnote omitted) (emphasis in original). j
Sadly, Westphal’s case is not an isolated one. As observed by Judge Thomas in the First District’s’panel opinion:
When an-employee sustains serious injuries that require prolonged or complicated medical treatment, it is not unusual for that claimant to exhaust entitlement tó 10j. iveeksr of temporary disability benefits before reaching maximum medical irhprovement' (the statús of full medical recovery) — paradoxically leaving only seriously injured individuals without compensation for disability while under medical instructions to re-fain from work that cannot be ignored lest a defense of medical non-compliance be raised.' Although this, result is ■anathema to the • stated purposes of chapter 440, providing injured workers with prompt medical and indemnity benefits, this court has held on numerous occasions that an’ award of permanent total disability benefits is premature until an injured worker reaches the stage of full medical-recovery.
*326 Westphal, No. 1D12-3563, slip op. at 17-18 (footnote omitted) (emphasis added).
Although Westphal has not argued at length that this Court should declare the entire workers’ compensation law unconstitutional, the statutory gap cannot be viewed in isolation from the remainder of the statutory scheme. Over the years, there has been continuous diminution of benefits and other changes in the law. For example, during the same period of time in which the Legislature reduced the provision of disability benefits, the Legislature also gave employers and insurance carriers the virtually unfettered right to select treating physicians in workers’ compensation cases. See § 440.13(2)(f), Fla. Stat. (2009); see also Butler v. Bay Ctr./Chubb Ins. Co., 947 So.2d 570, 572-73 (Fla. 1st DCA 2006). Further, the right of the employee and the employer to “opt out” of the workers’ compensation law, and preserve their tort remedies, was repealed. See §§ 440.015, 440.03, Fla. Stat. (2009). Other changes have included a heightened standard that the compensable injury be the “major contributing cause” of a worker’s disability and need for treatment, and a requirement that the injured worker pay a medical copayment after reaching maximum medical improvement. See §§ 440.09(1), 440.13(14)(c), Fla. Stat. (2009).
The current law also allows for apportionment of all medical costs based on a preexisting condition. See § 440.15(5), Fla. Stat. (2009). As Judge Webster has observed, allowing for the apportionment of medical costs means that “injured workers will be less likely to seek medical treatment, making it more likely that they will be unable to return to the workplace.” Staffmark v. Merrell, 43 So.3d 792, 798 (Fla. 1st DCA 2010) (Webster, J., concurring). This change, Judge Webster commented, significantly reduces the benefits to which many injured workers are entitled, thereby leading to a reasonable conclusion that “the right to benefits has become largely illusory.” Id.
Although this Court in Martinez, 582 So.2d at 1171-72, upheld the 1990 version of the workers’ compensation law on constitutional grounds, we wholeheartedly agree with Judge Thomas’s conclusion that the current version of the law presents a materially different situation:
We are now presented with a different iteration of the Workers’ Compensation Law from that addressed in Martinez— one which today provides an injured worker with limited medical care, no disability benefits beyond the 104-week period, and no wage-loss payments, full or otherwise. And, the lack of disability compensation occurs only because the severely injured worker has not reached maximum medical improvement as to the very injury for which redress is guaranteed under the Florida constitution.
The natural consequence of such a system of legal redress is potential economic ruination of the injured worker, with all the terrible consequences that this portends for the worker and his or her family. A system of redress for injury that requires the injured worker to legally forego any and all common law right of recovery for full damages for an injury, and surrender himself or herself to a system which, whether by design or permissive incremental alteration, subjects the worker to the known conditions of personal ruination to collect his or her remedy, is not merely unfair, but is fundamentally and manifestly unjust. We therefore conclude that the 104-week limitation on temporary total disability benefits violates Florida’s constitutional guarantee that justice will be administered without denial or delay.
*327 Westphal, No. 1D12-3563, op. at 320-21 (footnote omitted).
Thus, under the access to courts analysis articulated in Kluger, the only way' to avoid a holding of unconstitutionality under these circumstances would be to demonstrate an overwhelming public necessity to justify the Legislature’s elimination, of temporary total disability benefits after 104 weeks for our most injured workers. See Kluger, 281 So.2d at 4. We conclude that this showing has not been made. The statute is unconstitutional as applied-
Accordingly, the question becomes one of remedy. “Florida law has long held that, when the legislature approves unconstitutional statutory language and simultaneously repeals its predecessor, then the judicial act of striking the new statutory language automatically revives the predecessor unless it, too, would be unconstitutional.” B.H. v. State, 645 So.2d 987, 995 (Fla.1994). We therefore conclude that the proper remedy is the revival of the pre-1994 statute that provided for a limita-tion of 260 weeks of temporary total disability benefits. See § 440.15(2)(a), Fla. Stat. (1991). The provision of 260 weeks of temporary total disability benefits amounts to two and a half times more benefits — five years of eligibility for benefits rather than only two — and thus , avoids the constitutional infirmity created by the current statutory gap as applied to West-phal.
In this regard, we. respectfully disagree with the assertion in Justice Lewis’s concurring in result opinion that this remedy is insufficient because it still allows for the possibility of a statutory gap, and would therefore unconstitutionally deprive claimants of access to courts. Concurring in result op. of Lewis, J., at 328. In fact, as we have indicated throughout this opinion, we previously held that the pre-1994 statute’s limitation of 260 weeks “passes constitutional muster” because, it “remains a reasonable alternative to tort litigation,” where a worker “is not without a remedy.” Martinez, 582 So.2d at 1171-72. Although the length of time available for the administration of temporary total disability benefits to a worker before the worker reaches maximum medical .improvement does involve line drawing, the difference between a period of only two years (104 weeks) and five years (260 weeks) is significant as it relates to the time it takes a worker to attain maximum medical improvement.
III. CONCLUSION
For all the reasons explained, .in this opinion, we hold section 440.15(2)(a), Florida Statutes (2009), unconstitutional as applied to Westphal ánd all others similarly situated, as a denial of access to courts under article I, section 21, of the Florida Constitution. The statute deprives a severely injured worker of disability benefits at a critical time, when the worker cannot return to work and is totally disabled, but the worker’s doctors — chosen by the employer — determine that the worker has not reached maximum medical improvement.
Such a significant diminution in the availability of benefits for severely injured workers, particularly when considered in conjunction with the totality of changes to the workers’ compensation law from 1968, when the access to courts provision was added to -our Constitution, to the present, is unconstitutional under our precedent; Accordingly, we quash the First District’s en banc decision in Westphal and remand this case to the First District for further proceedings consistent with this opinion.
. It is so ordered.
LABARGA, C.J., and QUINCE, and PERRY, JJ., concur.
*328 LEWIS, J., concurs in result with an opinion.
CANADY, J., dissents with an opinion, in which POLSTON, J., concurs.

. In its decision, the First District ruled upon the following question, which it certified to be of great public importance:
IS A WORKER WHO IS TOTALLY DISABLED AS A RESULT OF A WORKPLACE ACCIDENT, BUT . STILL IMPROVING *314 FROM A MEDICAL STANDPOINT AT THE TIME TEMPORARY TOTAL DISABILITY BENEFITS EXPIRE, DEEMED TO BE AT MAXIMUM MEDICAL IMPROVEMENT BY OPERATION OF LAW AND THEREFORE ELIGIBLE TO ASSERT A CLAIM FOR PERMANENT AND TOTAL DISABILITY BENEFITS?
Westphal, 122 So.3d at 448. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const, Because of our conclusion that the First District’s interpretation of the' statute cannot withstand scrutiny, and our holding that the statute is. unconstitutional, we do not specifically answer the certified question. As our analysis in this opinion explains, to the extent the certified question simply asks whether the workers’ compensation law constitutionally permits the .statutory "gap” at issue, we answer that question in the negative.

. To the extent Justice Lewis’s concurring in result opinion suggests as a remedy that chapter 440 should be ''invalidated where defec- • tive,” the remedy of invalidating other sections in chapter 440 beyond section 440.15(2)(a) is not properly before us. In his briefing on this matter to the Court, Westphal requested reversal of the en banc decision of the First District Court of Appeal to "either reinstate the panel decision” — which revived the pre-1994 statute, that provided for the administration of 260 weeks of temporary total disability benefits — or hold "that the 104 weeks limitation on -temporary disability” is "unconstitutional as applied to the facts of this case and do so prospectively.” Petitioner's Initial Brief at 47. Because we hold that the statute is unconstitutional as applied to Westphal and others similarly situated, we have granted Westphal’s requested relief of reversing the en banc decision of the First District Court of Appeal and will not consider an argument of the unconstitutionality of the entire workers’ compensation law when the parties have not raised such an expansive remedy. Although the remedy of invalidating the entire workers' compensation law was suggested at some • length by the Florida Workers’ Advocates in an amicus curiae brief filed in support of Westphal, we do not consider. arguments raised by amici curiae that were not raised by the parties. See Riechmann v. State, 966 So.2d 298, 304 n. 8 (Fla. 2007); Dade Cty. v. E. Air Lines, Inc., 212 So.2d 7, 8 (Fla.1968); Michels v. Orange Cty. Fire Rescue, 819 So.2d 158, 159-60 (Fla. 1st DCA 2002).

. Both Westphal and the City invoked this Court’s discretionary jurisdiction, We consolidated the petitions but retained the two different case numbers. During briefing, we *318 treated Westphal as the petitioner and the City as the respondent, and we accordingly employ those same designations here.

. Section 440.12(1), Florida Statutes (2009), provides: "No compensation shall be allowed for the first 7 days of the disability, except benefits provided for in s. 440.13. However, if the injury results in disability of more than 21 days, compensation shall be allowed from the commencement of the disability.” Section 44044(3), Florida Statutes (2Ó09), provides in part: "The department shall establish by rule a form which shall contain a simplified checklist of those items which may be included as Wage’ for determining the average weekly wage.”1:

. As defined in section 440,02(22), Florida Statutes (2009), "permanent impairment” means "any anatomic or functional abnormality or loss determined as a percentage of the body as a whole, existing after the date of maximum medical improvement, which results from the injury."